UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PARK PLACE MASTER TENANT, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 21 C 2471 |
| AMERICAN ZURICH INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant American Zurich Insurance Company's ("Zurich") Motion to Dismiss Plaintiff Park Place Master Tenant, LLC's ("Park Place") First Amended Complaint. For the following reasons, the Court grants the Motion.

## BACKGROUND

For the purposes of this motion, the Court accepts as true the following facts from the Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Park Place's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Park Place brings this action seeking to recover business losses suffered because of the COVID-19 Pandemic.[1] Park Place operates the Hotel Constance Pasadena in

---

[1] The Court refers to both COVID-19 and the virus that causes it, SARS-CoV-2, as COVID-19.

Pasadena, California (the "Hotel"). Park Place has an "all-risk" insurance policy with Zurich that covers several properties, including the Hotel (the "Policy"). The Policy provides coverage for "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." The Policy defines "Covered Cause of Loss" as "direct physical loss unless the loss is excluded or limited in this policy." The Policy does not define "direct physical loss of or damage to" the property.

Under the Policy, Zurich will pay for the actual loss of Business Income sustained by Park Place because of the "necessary 'suspension' of [its] 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical loss of or damage to property at the premises" (the "Business Income Provision"). The Policy also provides coverage for loss of Business Income caused by direct physical loss of or damage to "dependent property." Dependent property is "property operated by others whom [Park Place] depend[s] on to: a) Deliver materials or services . . . b) Accept [Park Place's] products or services . . . c) Manufacture products for delivery to [Park Place's] customers under contract of sale . . . or d) Attract customers to [Park Place's] business" (the "Dependent Property Provision"). Finally, the Policy includes coverage for losses resulting from an "action of civil authority" when a Covered Cause of Loss causes damage to the property of another and "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage" (the "Civil Authority Coverage Provision"). However, the Policy excludes

2

from coverage losses caused by "any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion").

On March 4, 2020, California Governor Gavin Newsom declared a state of emergency in California because of the COVID-19 Pandemic. On March 19, 2020, Governor Newsom and local authorities issued stay-at-home orders, which mandated the shutdown of all non-essential businesses. Places of lodging, including hotels, were deemed essential businesses. Park Place says in response to the orders, the Hotel was "constructively closed to the public in order to prevent any gatherings of 10 or more people in the lobby, restaurants, bars or other common areas" and "received a drastic number of reservation cancellations."

Based on these allegations, Park Place seeks a declaratory judgment that its losses are covered by the Policy and claims Zurich breached the Policy by declining coverage. Park Place also asserts the Virus Exclusion does not apply. Zurich now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

3

plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

The parties agree Illinois law applies for purposes of this Motion. In Illinois, "the construction of an insurance policy is a question of law. An insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. However, a policy provision is not rendered ambiguous simply because the parties disagree as to its meaning." *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 WL 5630465, at *2 (N.D. Ill. 2020) (cleaned up).

4

**DISCUSSION**

Zurich moves to dismiss because there is no coverage under the Policy for Park Place's allegations and, even if there is, coverage is excluded under the Virus Exclusion. We address each in turn.

## I. Policy Coverage

The Court previously addressed nearly identical allegations in *Bradley Hotel v. Aspen Specialty Insurance*, 508 F. Supp. 3d 249 (N.D. Ill. 2020). There, the plaintiff hotel alleged business losses because of the COVID-19 Pandemic and Illinois Governor J.B. Pritzker's stay-at-home orders. *Id.* at 251. We held the Pandemic and stay-at-home orders did not cause "direct physical damage to" the property because that phrase requires "physical alteration or structural degradation to the property." *Id.* at 254–55. Similarly, there was no "direct physical loss of" the property because the plaintiff only alleged it could not use the property to the full extent it had before, not that it was prohibited from accessing the property. *Id.* at 255. Instead, the plaintiff alleged "the suspension of service was due to Governor Pritzker's Executive Orders, not for any reason related to the hotel property. Thus, Bradley Hotel's allegations amount to the 'forced closure of the premises for reasons extraneous to the premises themselves, and adverse business consequences that flow from such closure," which were not covered by the insurance policy. *Id.* (quoting *Sandy Point Dental*, 488 F. Supp. 3d at 693). Park Place does not attempt to distinguish *Bradley Hotel*.

5

As we noted in *Bradley Hotel*, the overwhelming majority of courts have found no insurance coverage for losses because of COVID-19 under similar policy language. *See, e.g.*, *T&E Chi. LLC v. Cincinnati Ins. Co.*, 501 F. Supp. 3d 647, 652 (N.D. Ill. 2020) (collecting cases); *Windy City Limousine Co., LLC v. Cincinatti Fin. Corp.*, 2021 WL 4806384, at *7 (N.D. Ill. 2021). In fact, since our ruling in *Bradley Hotel*, several federal courts of appeals have found no coverage for losses because of COVID-19 stay-at-home orders.

In *Oral Surgeons, P.C. v. Cincinnati Insurance Company*, the Eighth Circuit found an insurance policy did not cover the loss of use of a dental studio under Iowa law. 2 F.4th 1141, 1145 (8th Cir. 2021). The policy covered business losses caused by direct accidental physical loss or accidental physical damage to the covered property. The court determined the "policy cannot reasonably be interpreted to cover mere loss of use when the insured property has suffered no physical loss or damage." *Id.* at 1144. The court therefore concluded:

> The complaint pleaded generally that [the plaintiff] suspended non-emergency procedures due to the COVID-19 Pandemic and the related government-imposed restrictions. The complaint thus alleged no facts to show that it had suspended activities due to "accidental *physical* loss or accidental *physical* damage," regardless of the precise definitions of the terms "loss" or "damage." We reject [the plaintiff's] argument that the lost business income and the extra expense it sustained as a result of the suspension of non-emergency procedures were "caused by direct 'loss' to property." The policy clearly does not provide coverage for [the plaintiff's] partial loss of use of its offices.

*Id.* at 1145.

Similarly, in *Santo's Italian Café LLC v. Acuity Insurance Company*, the Sixth Circuit held that a restaurant's losses caused by Ohio's shut-down orders were not "direct physical loss of property" or "direct physical damage to property" under Ohio law. 2021 WL 4304607, at *3 (6th Cir. 2021). The shut-down orders "simply prohibited one use of the property" and the "restaurant has not been tangibly destroyed, whether in part or in full. And the owner has not been tangibly or concretely deprived of any of it. It still owns the restaurant and everything inside the space. And it can still put every square foot of the premises to use, even if not for in-person dining use." *Id.* at *2–3. Moreover, the "novel coronavirus did not physically affect the property in the way, say, fire or water damage would. No one argues that the virus physically and directly altered the property." *Id.* at *3. Thus, a "loss of use simply is not the same as a physical loss. It is one thing for the government to ban the use of a bike or scooter on city sidewalks; it is quite another for someone to steal it." *Id.*

Finally, in *Mudpie, Inc. v. Travelers Casualty Insurance Company of America*, the Ninth Circuit held that losses suffered by a children's store because of California's stay-at-home orders were not covered by its insurance policy under California law. 2021 WL 4486509, at *1 (9th Cir. 2021). The court said the plaintiff's "complaint does not identify a distinct, demonstrable, physical alteration of the property, and it does not allege that [the plaintiff] was permanently dispossessed of its property. Instead, [the plaintiff] alleges the Stay at Home Orders temporarily prevented [it] from operating its

7

store as intended, and urges us to interpret 'direct physical loss of or damage to' to be synonymous with 'loss of use.'" *Id.* at *5.

Here, Park Place's claimed losses are not covered under the Policy. Park Place does not allege that COVID-19 caused structural degradation of the Hotel necessitating repairs, or any other alteration to the Hotel caused by COVID-19. Park Place also does not allege any physical loss of the property. The stay-at-home orders did not prohibit Park Place from accessing the Hotel, nor did they prohibit it continuing to operate as a hotel.

As Judge Seeger appropriately analogized: "a driver could drop his keys in Lake Michigan. That's a loss of the keys, but only a loss of use of the car. Under the policy in question, a *physical* loss is a *sine qua non* of coverage. A loss of use without a physical loss doesn't count." *Image Dental, LLC v. Citizens Ins. Co. of Am.*, 2021 WL 2399988, at * 7 (N.D. Ill. 2021) (emphasis in original). Park Place does not allege it was permanently dispossessed of the Hotel, only a partial loss of use. Under the unambiguous terms of the Policy, Park Place's allegations are not enough to trigger coverage under the Business Income Provision of the Policy.

Park Place's claims under the Civil Authority Coverage Provision are similarly deficient. Park Place does not allege the stay-at-home orders were issued because of physical damage to a property within a mile of the Hotel. Instead, the stay-at-home orders were issued because of the human health threat of COVID-19. And, again,

8

access to the Hotel was not prohibited. Park Place could continue to access the property and continue to operate as a hotel, albeit in a more limited fashion. Likewise, Park Place does not allege physical damage to any dependent property. Therefore, there is no coverage under the Civil Authority or Dependent Property Provisions of the Policy.

## II. Virus Exclusion

Even if Park Place's claimed losses were covered under the Policy, coverage would be excluded under the Virus Exclusion. The Court has twice determined that unambiguous virus exclusions like the one here preclude coverage for claimed losses because of COVID-19. *See Riverwalk Seafood Grill Inc. v. Travelers Cas. Ins. Co. of Am.*, 2021 WL 81659 (N.D. Ill. 2021); *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 2021 WL 679227 (N.D. Ill. 2021). In those cases, "we held that the 'plain language of the Virus Exclusion is dispositive' and that it is therefore unsurprising that federal courts have 'nearly unanimously' held that exclusions like those here bar coverage." *Mashallah*, 2021 WL 679227, at *2 (quoting *Riverwalk Seafood*, 2021 WL 81659, at *3). One of the virus exclusions in *Mashallah* excluded from coverage "loss or damage caused by or resulting from any virus that induces or is capable of inducing physical distress, illness or disease." *Id.* COVID-19 is, of course, a virus capable of inducing illness, triggering the exclusion. *Id.*

Here, the Virus Exclusion unambiguously excludes from coverage "any virus, bacterium or other micro-organism that induces or is capable of inducing physical

9

distress, illness or disease." As we said in *Mashallah*, COVID-19 is clearly a virus that causes physical illness. Thus, any coverage for losses caused by COVID-19 Park Place may have under the Policy is excluded by the Virus Exclusion. Park Place again does not attempt to distinguish *Mashallah* or *Riverwalk Seafood*.

To get around the Virus Exclusion, Park Place argues Zurich fails to show the exclusion applies because the stay-at-home orders were the efficient proximate cause of its losses. We disagree.

In *Mashallah*, we found COVID-19 was the efficient proximate cause of the plaintiffs' claimed losses under Illinois law. *Id.* at *3–4. In applying the "efficient" or "dominant" causation approach, the Court asks: "was COVID-19 'simply the dominant cause' that set the other causes in motion in an 'unbroken causal sequence?'" *Id.* at *3 (quoting *Bozek v. Erie Ins. Grp.*, 2015 IL App (2d) 150155, ¶ 21). We concluded that it did. "Obviously. There is no genuine dispute that the activity of a virus, namely COVID-19, set government restrictions in motion, and is therefore the efficient proximate cause of Plaintiffs' claimed losses." *Id.* (cleaned up). "Indeed, the closure orders would not exist absent the presence of COVID-19. After all, the closure orders *only came about sequentially as a result of* the COVID-19 virus spreading rapidly throughout the community." *Id.* (cleaned up and emphasis in original). Here, too, COVID-19, not the stay-at-home orders, was the efficient proximate cause of Park Place's claimed losses. Thus, Park Place's argument fails.

10

Park Place next argues that Zurich should be estopped from enforcing the Virus Exclusion under the principles of regulatory estoppel. The regulatory estoppel theory was first recognized in New Jersey. *See Morton Int'l, Inc. v. Gen. Accident Ins. Co.*, 134 N.J. 1 (1993), *cert. denied*, 512 U.S. 1245 (1994). The basic premise is that insurers cannot say one thing to an insurance regulator and another thing to the insured. *See id.* According to Park Place, groups lobbying on behalf of insurance companies said in filings with state regulators that virus exclusions were intended to "clarify" coverage was never available for "disease-causing agents." But Park Place asserts this was false—courts had found coverage for "disease causing agents," so the virus exclusions were indeed intended to change the scope of coverage.

The problem with Park Place's argument is that Illinois does not recognize regulatory estoppel, as we previously noted. *See Sojo's Studios Inc. v. Citizens Ins. Co. of Am.*, 2021 WL 837623, at *1 (N.D. Ill. 2021). The Illinois Supreme Court made clear "courts are not required to 'examine the relevant insurance industry drafting history' where a provision is unambiguous." *Id.* (quoting *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill. 2d 278, 301 (2001)). This is because of the "well-settled principle that it is unnecessary" for a court "to consider extrinsic evidence of a policy's purported meaning where the words of the policy are unambiguous." *Ellsworth v. Grinnell Mut. Reinsurance Co.*, 2016 IL App (5th) 150158-U, ¶ 35; *see also Sojo's Studios*, 2021 WL 837623, at *1. The Seventh Circuit also rejected regulatory estoppel principles. *See*

11

*Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 153 (7th Cir. 1994) ("Although several courts have considered the public record from the development and regulatory approval of the pollution exclusion . . . we will not look beyond the unambiguous policy language."). "So do we." *Sojo's Studios*, 2021 WL 837623, at *1. The Virus Exclusion is clear and unambiguous, and we will not deviate from its terms.

Accordingly, Zurich's Motion is granted. Because Park Place does not seek leave to amend, the Complaint is dismissed with prejudice. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects.").

## CONCLUSION

For the reasons stated above, the Court grants Zurich's Motion to Dismiss (Dkt. # 16). The Complaint is dismissed with prejudice. Civil case terminated. It is so ordered.

Dated: 10/29/2021

*/s/ Charles P. Kocoras*
Charles P. Kocoras
United States District Judge